UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:                                )
                                      )
                                      )   Case No. 05 B 12554
CAPITAL ACQUISITIONS &                )
MANAGEMENT CORP.,                     )   Chapter 11
                                      )
        Debtor.                       )   Judge Pamela S. Hollis

## MEMORANDUM OPINION

This matter comes before the court on the Receiver's Motions for Approval of Sale of Debtor's Interest in Rainbow International Holdings, LLC and for Approval of Bidding Procedures for Sale. The Receiver's motions generated extensive briefing by Roy G. Welland and by Rainbow. For the reasons stated below, the court grants the Motion for Approval of Bidding Procedures for Sale and enters and continues the Motion for Approval of Sale until the auction date.

## BACKGROUND

On December 2, 2004, the Federal Trade Commission initiated a lawsuit in U.S. District Court against Capital Acquisitions & Management Corp., known here as CAMCO. The very next day, the court entered a temporary restraining order appointing LePetomane XII, Inc. as the temporary equity receiver of the assets of CAMCO and two related entities. The Receiver took possession of the assets and operations on December 6, 2004.

On January 19, 2005, the District Court entered a stipulated preliminary injunction continuing the receivership and the Receiver's appointment. On April 4, 2005, several of CAMCO's creditors filed an involuntary petition for relief under Chapter 11 against CAMCO. Ten days later, this court ordered the Receiver to continue the duties and powers imposed by the District Court. An order for relief was entered against CAMCO on July 7, 2005.

Rainbow International Holdings, LLC is a Florida limited liability company. CAMCO is a member of Rainbow and holds a 20% interest in it. CAMCO's interest in Rainbow is subject to the terms of an Operating Agreement.

In January 2005, the Receiver received an offer of $20,000 for CAMCO's interest in Rainbow from one of the other members of the LLC. On August 22, 2005, the Receiver received a written offer from Roy G. Welland to purchase CAMCO's interest in Rainbow for $30,000. On September 19, 2005, the Receiver received another written offer, from counsel for the other members of Rainbow, to purchase CAMCO's interest for $35,000.

Upon receipt of the $35,000 offer, the Receiver notified Welland that a higher offer than his had been received, and inviting an additional offer by September 26, 2005. When Welland did not respond, the Receiver filed its motion for approval of sale, seeking court authority to sell CAMCO's interest in Rainbow to the other members for $35,000.

The day before the hearing on the Receiver's sale motion, Welland filed a response offering $40,000 for CAMCO's interest in Rainbow. Welland's offer specified that the Receiver must transfer CAMCO's interest free and clear of liens, pursuant to 11 U.S.C. § 363(f), and that the Receiver would reject all executory contracts relating to CAMCO's interest in Rainbow.

The Receiver then filed its Motion for Approval of Bidding Procedures, seeking court authority to sell its interest in Rainbow by auction. Pursuant to paragraph 13(b) of the Bid Procedures Motion, bidders must indicate in writing that they are familiar with all of the terms of the Operating Agreement and that they accept the terms and conditions of sale attached to the motion as Exhibit B.

## CONTENTIONS OF THE PARTIES

Rainbow first came before the court on its objection to the Bid Procedures Motion, making three arguments. First, that Welland was foreclosed from bidding until Rainbow and/or the other members exercised their right of first refusal. Second, that Welland had lost any right to bid when the September 26 "deadline" passed without another offer. And finally, that even if Welland could bid, he cannot alter the terms of the Operating Agreement by requiring the Receiver to reject all executory contracts.

Welland responded by urging the court to reject any restrictions on assignment of CAMCO's interest in Rainbow as well as the right of first refusal. He asserts that these are executory contracts which may be rejected. He also distinguishes Rainbow's primary case, In re IT Group, for two reasons: first, because it deals with assignment rather than rejection, and second, because the right of first refusal in that case would not hurt the asset's value. Finally, Welland argues that the current members have waived enforcement of the Operating Agreement by participating in an informal bidding process.

Rainbow replied, raising for the first time the notion that Florida law cuts off an entity's interest in an LLC once a receiver is appointed. This argument has since been resolved, because the Florida statute is only applicable where the entity consented to appointment of the receiver. Rainbow also rejects Welland's argument that the Operating Agreement is an executory contract, noting that while members hold certain rights under the Agreement they have no duties or obligations. The right of first refusal, states Rainbow, is not a material obligation since a breach by one party does not excuse performance by another. Finally, Rainbow denies that the restrictions in the Operating Agreement were somehow waived by the informal bidding.

In his sur-reply, Welland points out that Rainbow has already admitted in paragraphs 20

and 21 of its Objection that the Operating Agreement is an executory contract. There are continuing duties imposed upon the members. He also argues that the right of first refusal may be invalidated under § 365(f)(1), and reiterates his argument that Rainbow waived enforcement of the sale restrictions.

Rainbow filed a sur-response. Rainbow again argues that the Operating Agreement is not executory because the members have no current obligations, and notes that Welland has failed to cite any cases which hold that an operating agreement for an LLC is executory. Additionally, the Receiver takes only what it held at the beginning of the bankruptcy case. It cannot offer CAMCO's interest in Rainbow on terms different from those in the Operating Agreement, as in Welland's purchase offer.

At the previous status hearing, the court asked the parties to confirm whether any questions of fact remain or whether this matter can be decided on the papers. Welland advised the court by letter dated March 15, 2006, that Rainbow made certain statements in its sur-response that could be considered to be both factual and relevant. For the reasons stated below, the court has determined that no evidentiary hearing is required and that this matter is ripe for ruling.

## DISCUSSION

Two factual issues were initially raised by the parties but have been resolved. It is clear that CAMCO did not consent to the appointment of the Receiver, and that the Operating Agreement has been authenticated.

The court will next address the waiver arguments. Welland did not waive his opportunity to make a new offer because he missed a deadline set by the Receiver in a letter. This "deadline"

was neither court-ordered nor required under any applicable statute or agreement, and does not have the force of law.

Neither did Rainbow waive its rights under the Operating Agreement when it offered $35,000 for CAMCO's interest in Rainbow. The October 14, 2005, letter which contained the offer describes in some detail the sale process required by the Operating Agreement, and reminds the Receiver that it is bound by the provisions of the Agreement. Rainbow's counsel then states:

> That having been said, in light of the costs to be incurred, by both parties, relative to the engaging of appraisers, to determine the "Appraised Value" of the Rainbow share, together with additional legal fees, relative to Rainbow's intent to enforce the provisions contained in Section 11.1 of the Operating Agreement, acknowledging CAMCO's receipt of a written offer from a third-party for the purchase of its Rainbow shares for $30,000, the remaining members of Rainbow are prepared to purchase such shares at an aggregate price of $35,000. . . .
>
> Should this offer not be accepted by LePetomane XII, Inc., the court-appointed federal equity receiver, within 15 days, from the date of this letter (the "Notice Expiration Date"), this letter shall constitute written demand by Rainbow, to such receiver that, consistent with the provisions contained in Section 11.3.1 of the Operating Agreement, each part appoint an appraiser, within 30 days from the date of this letter (which is 15 days from the Notice Expiration Date), to determine the value of the equity of Rainbow's assets.

Rainbow neither ignored nor waived the provisions of the Operating Agreement. It offered to short-circuit the process, in an effort to be efficient and to conserve resources for all parties – steps which are not uncommon and in fact are encouraged in bankruptcy court.

Having disposed of the waiver arguments, the court next turns to the legal issue of whether the Operating Agreement is an executory contract which may be assumed or rejected. The standard under which the court must determine whether a contract is executory was first stated by Professor Countryman in his seminal 1973 article: whether "the obligations of both parties are so far unperformed that the failure of either party to complete performance would

-5-

constitute a material breach and thus excuse the performance of the other." Countryman, Vern, Executory Contracts in Bankruptcy: Part I, 57 MINN. L. REV. 439 (1973).

The Operating Agreement does provide that if circumstances change, CAMCO may have certain future obligations – for example, to indemnify the LLC "from any liability or loss incurred by virtue of the assessment of any tax with respect to such Member's allocable share of the profits or gain of the Company." Section 4.4. Does the remote possibility of future obligations mean that the contract is executory? Must the court place these possibilities on a scale, rating the likelihood that they will occur, and draw a bright line to demarcate those contracts that are executory because the condition is more likely than not?

It cannot be that the court must speculate as to how remote such contingencies are. Welland has not identified any present obligations on CAMCO's part to take an action in the future which, if left unperformed, would constitute a material breach. There is no factual issue regarding whether CAMCO has any duties that are currently owed, only duties that may be owed at some time if some event occurs.

A narrow definition of an executory contract is consistent with Seventh Circuit authority.

> While almost all agreements to some degree involve unperformed obligation on either side, such an expansive definition of the term 'executory' is not what Congress enacted through its choice of language in § 365.

Gouveia v. Tazbir, 37 F. 3rd 295, 298-299 (7th Cir. 1994).

The court notes that while Rainbow accused Welland of failing to cite any authority holding that an LLC operating agreement is an executory contract, such authority does exist. See Matter of Daugherty Construction, Inc., 188 B.R. 607, 612 (Bankr. D. Neb. 1995) (LLC members had a continuing obligation to participate in management; some members had obligations to provide other types of services); Milford Power Co., LLC v. PDC Milford Power,

LLC, 866 A. 2nd 738, 750 and n.29 (Del. Super. 2004) (Since the parties assumed that the agreement was executory, court merely stated as dicta that "the substantial weight of federal authority . . . treats agreements for the operation of entities like limited partnerships and LLCs as executory contracts when those agreements contemplate an important, on-going role for the debtor in management." The Court also noted that "[t]he question of whether a typical LLC agreement is an executory contract is not without its own complexities. Here, however, the important managerial role accorded to PDC as a member renders the plaintiffs' concession understandable, given the weight of federal precedent."); Sumlin Construction Co., L.L.C. v. Taylor, 850 So. 2nd 303, 311 (Ala. 2002).

Nevertheless, the court could not locate any case published in the Seventh Circuit, bound by the Circuit's narrow definition of executory contracts, which found an LLC operating agreement to be an executory contract. Having reviewed the specific operating agreement at issue in this case, and finding neither current obligations nor any role, let alone an important one, for CAMCO in the management of the LLC, the court concludes that the Operating Agreement is not an executory contract and cannot be assumed, assigned or rejected. This conclusion is consistent with the persuasive precedent from other courts which have found the operating agreements of limited liability companies are not executory contracts. Movitz v. Fiesta Investments, LLC (In re Ehmann), 319 B.R. 200 (Bankr. D. Ariz. 2005); In re Garrison-Ashburn, L.C., 253 B.R. 700 (Bankr. E.D. Va. 2000); Samson v. Prokopf (In re Smith), 185 B.R. 285 (Bankr. S.D. Ill. 1995) (limited partnership agreement).

The remaining question is whether the Receiver's sale of CAMCO's economic interest in Rainbow is subject to all of the terms of the Operating Agreement, or whether the right of first

refusal is not enforceable under 11 U.S.C. § 365(e) as an <u>ipso facto</u> clause or an impermissible restraint on assignment under § 365(f).

The provisions of § 365 are only applicable to executory contracts, and the court has already concluded that the Operating Agreement is not an executory contract. Moreover, even if it were an executory contract and if §§ 365(e) and (f) were applicable, the right of first refusal would still be enforceable.

Rainbow has identified the most analogous precedent, <u>In re The IT Group, Inc., Co.</u>, 302 B.R. 483 (D. Del. 2003). In <u>IT Group</u>, the debtors were members of an LLC. After filing for bankruptcy, the debtors attempted to transfer their bare economic rights under the LLC's operating agreement to a third party, the Shaw Group. The bankruptcy court concluded that debtors' assumption and assignment to Shaw was subject to the other members' right of first refusal. The court rejected Shaw's contention that the right of first refusal was essentially an <u>ipso facto</u> clause and should have been invalidated. On appeal, the district court determined that "the Bankruptcy Court correctly concluded that the right of first refusal is enforceable in this case." <u>Id.</u> at 488. The right of first refusal was not triggered by the debtors' insolvency, or by the filing of a bankruptcy case, or by the appointment of a trustee or custodian. Therefore, it was not an <u>ipso facto</u> clause and was enforceable. "Essentially, Judge Farnan affirmed the Bankruptcy Court's separation of the LLC Agreement into its executory and non-executory components, treating the bare economic interest more like a property right subject to § 541 . . .". <u>Milford Power</u>, 866 A. 2nd at 759 n.56.

Similarly, the right of first refusal under Rainbow's Operating Agreement was not triggered by the bankruptcy filing or by the appointment of the Receiver:

> In the event a Member for any reason elects to sell his Interest in the Company or any portion thereof (the "Selling Member") to a third party, the Selling Member shall give Notice of Intent to Transfer, which Notice, pursuant to this Section 11.1 hereof, shall set forth the name of the third party which is the potential purchaser of the Interest, together with the price, terms and closing date for said sale. In such event, the Company and the Remaining Members shall have the option to purchase the Interest of the Selling Member.

Section 11.2 provides the procedure for the exercise of the option to purchase the Selling Member's interest. Then Section 11.3 provides the appraisal process for determining the value of the equity of Rainbow's assets. Not being triggered by a bankruptcy filing, the sale provision is not an ipso facto clause.

Welland argues that enforcing the right of first refusal would dampen the Receiver's ability to assign the interest, or prevent this estate from realizing the full value of the interest in Rainbow, because in a situation where there is only one bidder, that bidder would not negotiate against himself to raise the price. If Rainbow did not have the right of first refusal, it would need to participate in the bidding process in order to have the opportunity to purchase CAMCO's interest in the LLC.

However, as Rainbow points out, the Operating Agreement provides a mechanism for determining the fair market value of CAMCO's interest – the mandatory appraisal in Section 11.3.

Moreover, as in IT Group, enforcing the right of first refusal would not "hamper the Debtor['s] ability to assign the property or foreclose the estate from realizing the full value of the Debtor['s] interest in" the limited liability company. Id. at 488. The court in Milford Power explained Judge Farnan's conclusions in IT Group as follows: "Because the right of refusal existed as to any transfer, whether the transferor was in bankruptcy or not, that property right was to be respected within the bankruptcy process and would not, [Judge Farnan] reasoned,

injure the debtor-members' ability to recoup the full value of their bare economic rights." 866 A. 2nd at 759.

Could CAMCO achieve a higher price for its interest in Rainbow without the right of first refusal? Possibly. But CAMCO knew when it signed the LLC Operating Agreement that any sale of its interest at any time, whether or not it was in bankruptcy, would be subject to the right of first refusal held by the other members. The Receiver took CAMCO's property rights as it found them on the date of the petition. CAMCO's interest in Rainbow is subject to this right of first refusal, and that is how the Receiver must sell it.

For all of the reasons stated above, the court grants the Motion for Approval of Bidding Procedures for Sale and enters and continues the Motion for Approval of Sale until the auction date.

Date: APR 27 2006

PAMELA S. HOLLIS
United States Bankruptcy Judge